# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON,** <br><br> Plaintiff, <br><br> vs. <br><br> **APPLE, INC.,** <br><br> Defendant. | Civil Action No. 6:22-cv-60 <br><br> JURY TRIAL |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") file this Original Complaint for Patent Infringement against Apple, Inc. ("Apple"), and allege as follows:

## NATURE OF THE ACTION

1. For more than four decades, Ericsson has pioneered the development of the modern cellular network. Ericsson develops and sells infrastructure equipment that makes up the backbone of modern networks; that is, the base stations and cell tower equipment that mobile phones communicate with. Major mobile network operators all over the world buy equipment and/or services from Ericsson. Ericsson manages networks that serve more than one billion subscribers globally, and Ericsson's equipment is found in more than one hundred and eighty countries.

2. Ericsson is widely viewed as one of the leading innovators in the field of cellular communications. Due to the work of more than twenty-six thousand Ericsson research and development employees, Ericsson's inventions are a valuable part of the fundamental technology

used in phones and cellular networks worldwide, providing improved performance and new features for the benefit of consumers. Worldwide, more than forty percent of all mobile phone calls are made through Ericsson networks. Ericsson employs approximately ten thousand people in North America, including a substantial number of employees in the United States.

3. Ericsson has a long history of innovative technical contributions, including the Asserted Patents. In addition, some of Ericsson's other accomplishments include:

- 1878: Ericsson sold its first telephone;
- 1977: Ericsson introduced the world's first digital telephone exchange;
- 1981: Ericsson introduced its first mobile telephone system, NMT;
- 1991: Ericsson launched 2G mobile phones and the world's first 2G network;
- 1994: Ericsson invented Bluetooth wireless technology;
- 2001: Ericsson made the world's first 3G wireless call for Vodafone UK;
- 2009: Ericsson started the world's first 4G network and made the first 4G call;
- 2010: Ericsson equipment serving over two billion mobile subscribers;
- 2013: Ericsson serving 500+ cellular operators in 180+ countries;
- 2014: European Patent Office selected Ericsson inventors as finalists for the European Inventor Award, based on contributions to 4G/LTE;
- 2015: Former Ericsson engineer Jaap Haartsen was inducted into the National Inventors Hall of Fame for Bluetooth Wireless Technology;
- 2018: Ericsson had submitted over 10,000 technical contributions to 5G standards; and
- 2021  Ericsson USA 5G "Smart Factory" recognized as "Global Lighthouse" by the World Economic Forum.

4. As a result of its extensive research and development efforts, Ericsson has been awarded more than fifty-seven thousand patents worldwide. Many of Ericsson's patents are essential to the telecommunications standards ("Cellular Standards"), including 2G (GSM, GPRS, and EDGE), 3G (UMTS/WCDMA and HSPA), 4G (LTE, LTE-Advanced, and LTE-Advanced Pro) and 5G (NR, New Radio), which are used by Apple's products.

5. For decades, Ericsson has voluntarily contributed its cellular inventions to develop and improve the Cellular Standards. Ericsson has also voluntarily and publicly committed to ETSI that it is prepared to grant licenses under its portfolio of patents essential to the Cellular Standards ("Essential Patents") on fair, reasonable, and non-discriminatory terms.

6. Consistent with its FRAND commitment, Ericsson has widely licensed its portfolio of Essential Patents in over one hundred agreements with members of the telecommunications industry that have agreed to pay royalties to Ericsson for a global portfolio license. Ericsson reinvests much of the licensing revenue it receives under these global agreements into inventing future generations of standardized telecommunication technologies, spending nearly five billion dollars annually on research and development.

7. Apple is the largest smartphone manufacturer in the United States and requires a license to Ericsson's Essential Patents. Apple first licensed Ericsson's 2G and 3G Essential Patents in 2008 when it released the first iPhone. In 2015, Apple and Ericsson executed another global cross-license, covering both parties' patents related to the 2G, 3G, and 4G cellular standards. Based on the expiration of those licenses, Apple is no longer licensed to Ericsson's Essential Patents.

## THE PARTIES

8. Plaintiff Ericsson Inc. is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

9. Plaintiff Telefonaktiebolaget LM Ericsson is a corporation organized under the laws of the Kingdom of Sweden with its principal place of business at Torshamnsgatan 21, Kista, 164 83, Stockholm, Sweden.

10. Apple is a California corporation having a principal place of business located at 1 Infinite Loop, Cupertino, California 95014, and regular and established places of business at 12535 Riata Vista Circle, Austin, Texas and 5501 West Parmer Lane, Austin, Texas.

## JURISDICTION AND VENUE

11. This is an action arising under the patent laws of the United States, 35 U.S.C. § 271. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

12. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement and has a regular and established place of business in this District as set forth below.

13. Apple maintains an office in Austin, Texas at "West Parmer Lane and Riata Vista Circle, where most of its 7,000 Austin employees work." (*See* Apple checks in with 192-room hotel for billion-dollar Northwest Austin campus, CultureMap Austin (available at https://austin.culturemap.com/news/city-life/05-20-20-apple-adds-surprising-element-to-1-billion-campus-in-northwest-austin/.)  This "1.1 million-square-foot campus, which was completed in 2016, features seven office buildings on 38 acres" and "represents Apple's largest hub outside its $5 billion headquarters in Cupertino, California." (*Id.*)  In addition, Apple has stated that it has "has broken ground on its new $1 billion, 3-million-square-foot campus" near its existing campus.  (*See* https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/.) This new campus "will initially house 5,000 employees, with the capacity to grow to 15,000, and is expected to open in 2022." (*Id.*)  All told, "Apple is poised to become Austin's largest private employer in the not-too-distant future." (*See* Apple checks in with 192-room hotel for billion-dollar Northwest Austin campus, CultureMap Austin.)

14. In addition to its Parmer Lane and Riata Vista campuses, Apple owns and operates at least five other physical places of business in this District. These include three retail spaces in Austin, one retail space in San Antonio, and one retail space in El Paso. In such retail spaces, Apple markets, sells, and services revenue directly from the products accused of infringement in this case.

15. In addition to the approximately 7,000 current employees in Austin, Apple's Careers at Apple website currently lists over 600 jobs available in the Austin area, including 191 jobs related to its iPhone products. (*See* https://jobs.apple.com/en-us/search?location=austin-AST.)

16. This Court has personal jurisdiction over Apple. Apple has continuous and systematic business contacts with the State of Texas. In addition, Apple conducts its business extensively throughout Texas and derives substantial revenue in Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and/or services in the State of Texas and the Western District of Texas. Apple has purposefully and voluntarily placed in the stream of commerce one or more products and/or services that practice the Asserted Patents (as set forth in ¶¶ 17-20 below) with the intention and expectation that they will be purchased and used by consumers in the Western District of Texas.

## THE ASSERTED PATENTS

17. U.S. Patent No. 8,102,805 ("the '805 Patent"), entitled "HARQ in Spatial Multiplexing MIMO System," was duly and legally issued to inventors Bo Göransson, Per Johan Torsner, and Stefan Parkvall on January 24, 2012. The '805 Patent claims priority to Foreign Patent Application No. SE0602300 filed on October 31, 2006. Ericsson owns by assignment the entire

right, title, and interest in the '805 Patent and is entitled to sue for past and future infringement. The '805 Patent, filed as U.S. Patent Application No. 12/447,522, was declared to 3GPP (ETSI) at least on September 17, 2009.

18. U.S. Patent No. 9,532,355 ("the '355 Patent"), entitled "Transmission of system information on a downlink shared channel," was duly and legally issued to inventors Erik Dahlman and Vera Vukajlovic Kenehan on December 26, 2016. The '355 Patent claims priority to U.S. Patent Application No. 12/664,347, filed on December 11, 2009; International Patent Application No. PCT/SE2008/050407, filed on April 10, 2008; and U.S. Provisional Patent Application No. 60/944,628, filed on June 18, 2007. Ericsson owns by assignment the entire right, title, and interest in the '355 Patent and is entitled to sue for past and future infringement. The '355 Patent, filed as U.S. Patent Application No. 14/639,287, was declared to 3GPP (ETSI) at least on September 17, 2009 and May 19, 2017.

19. U.S. Patent No. 10,425,817 ("the '817 Patent"), entitled "Subscription Concealed Identifier," was duly and legally issued to inventors Noamen Ben Henda, David Castellanos Zamora, Prajwol Kumar Nakarmi, Pasi Saarinen, and Monica Wifvesson on September 24, 2019. The '817 Patent claims priority to International Patent Application No. PCT/EP2018/069432, filed on July 17, 2018, and U.S. Provisional Patent Application No. 62/536,632, filed on July 25, 2017. Ericsson owns by assignment the entire right, title, and interest in the '817 Patent and is entitled to sue for past and future infringement. The '817 Patent, filed as U.S. Patent Application No. 16/200,037, which claims priority to U.S. provisional patent application No. 62/536,632, was declared to 3GPP (ETSI) at least on December 22, 2017.

20. U.S. Patent No. 11,139,872 ("the '872 Patent"), entitled "Codebook Subset Restriction Signaling," was duly and legally issued to inventors Sebastián Faxér, Mattias Frenne, Simon Järmyr, George Jöngren, and Niklas Wernersson on October 5, 2021. The '872 Patent claims priority to U.S. Patent Application Nos. 17/001,133, filed August 24, 2020; 16/239,870, filed January 4, 2019; and 15/105,648 filed on January 11, 2016; and to U.S. Provisional Patent Application No. 62/103,101, filed on January 14, 2015. Ericsson owns by assignment the entire right, title, and interest in the '872 Patent and is entitled to sue for past and future infringement. The '872 Patent's grandparent application, filed as U.S. Patent Application No. 15/105,648, was declared to 3GPP (ETSI) at least on December 8, 2017, December 15, 2017, and December 16, 2019.

## Count I: Claim for Patent Infringement of the '805 Patent

21. Ericsson repeats and realleges the allegations in paragraphs 1-20 as if fully set forth herein.

22. Apple has infringed, contributed to the infringement of, and/or induced infringement of the '805 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '805 Patent including, but not limited to, mobile telephones, tablet computers, and smart watches with cellular connectivity that implement 4G LTE, including iPhones, iPads, and Apple Watches (Apple's iPhone, iPads, and Apple Watches are herein referred to as the "Accused Products").

23. For example, the Accused Products infringe at least claims 19-20, 22-27, and 29-32 of the '805 Patent. Apple makes, uses, sells, offers for sale, imports, exports, supplies or

distributes within the United States these devices, which are covered by or made by a process covered by the claims of the '805 Patent, and thus directly infringes the '805 Patent.

24. Apple indirectly infringes the '805 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Accused Products, who perform each step of the claimed invention as directed by Apple. Apple received actual notice of the '805 Patent at least as early as the filing of Ericsson's 2015 complaint against Apple in Inv. No. 337-TA-953, *Matter of Certain Wireless Standard Compliant Electronic Devices, Including Communication Devices and Tablet Computers*, in which Ericsson asserted the '805 Patent; Ericsson's complaint against Apple in the Eastern District of Texas (2:15-cv-287), in which Ericsson also asserted the '805 Patent; and the filing of this Complaint.

25. Apple affirmatively acts to sell the Accused Products, cause the Accused Products to be manufactured, and provide directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Accused Products in a manner that directly infringes the '805 Patent. Through its manufacture and sales of the Accused Products, Apple performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

26. Apple also indirectly infringes the '805 Patent by contributing to infringement by others, such as manufacturers, resellers and end-users, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers and end-users of the Accused Products.

27. Apple's affirmative acts of selling the Accused Products and causing the Accused Products to be manufactured and sold contribute to Apple's manufacturers, resellers and end-users making or using the Accused Products in a normal and customary way that infringes the '805 Patent. The Accused Products constitute the material part of Ericsson's patented invention, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use to infringe the '805 Patent.

28. Apple's infringement of the '805 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Ericsson pursuant to 35 U.S.C. §§ 284-285.

29. By way of example only, Apple's iPhone 13 infringes claim 19 of the '805 Patent as set forth in the claim chart attached as Exhibit A.

## Count II: Claim for Patent Infringement of the '355 Patent

30. Ericsson repeats and realleges the allegations in paragraphs 1-29 as if fully set forth herein.

31. Apple has infringed, contributed to the infringement of, and/or induced infringement of the '355 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '355 Patent including, but not limited to, mobile telephones, tablet computers, and smart watches with cellular connectivity that implement 4G LTE and/or 5G technology, including the Accused Products.

32. For example, the Accused Products infringe at least claims 17, 19-21, 23-24, 26-27, 29, and 33-36 of the '355 Patent. Apple makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices, which are covered by or made by a process covered by the claims of the '355 Patent, and thus directly infringes the '355 Patent.

33. Apple indirectly infringes the '355 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Accused Products, who perform each step of the claimed invention as directed by Apple. Apple received actual notice of the '355 Patent at least as early as the filing of this Complaint.

34. Apple affirmatively acts to sell the Accused Products, cause the Accused Products to be manufactured, and provide directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Accused Products in a manner that directly infringes the '355 Patent. Through its manufacture and sales of the Accused Products, Apple performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

35. Apple also indirectly infringes the '355 Patent by contributing to infringement by others, such as manufacturers, resellers and end-users, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers and end-users of the Accused Products.

36. Apple's affirmative acts of selling the Accused Products and causing the Accused Products to be manufactured and sold contribute to Apple's manufacturers, resellers and end-users

making or using the Accused Products in a normal and customary way that infringes the '355 Patent. The Accused Products constitute the material part of Ericsson's patented invention, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use to infringe the '355 Patent.

37. Apple's infringement of the '355 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Ericsson pursuant to 35 U.S.C. §§ 284-285.

38. By way of example only, Apple's iPhone 13 infringes claim 17 of the '355 Patent as set forth in the claim chart attached as Exhibit B.

### Count III: Claim for Patent Infringement of the '817 Patent

39. Ericsson repeats and realleges the allegations in paragraphs 1-38 as if fully set forth herein.

40. Apple has infringed, contributed to the infringement of, and/or induced infringement of the '817 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '817 Patent including, but not limited to, mobile telephones, tablet computers, and smart watches with cellular connectivity that implement 5G technology, including the Accused Products.

41. For example, the Accused Products infringe at least claims 10-16 of the '817 Patent. Apple makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United

States these devices, which are covered by or made by a process covered by the claims of the '817 Patent, and thus directly infringes the '817 Patent.

42. Apple indirectly infringes the '817 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Accused Products, who perform each step of the claimed invention as directed by Apple. Apple received actual notice of the '817 Patent at least as early as the filing of this Complaint.

43. Apple affirmatively acts to sell the Accused Products, cause the Accused Products to be manufactured, and provide directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Accused Products in a manner that directly infringes the '817 Patent. Through its manufacture and sales of the Accused Products, Apple performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

44. Apple also indirectly infringes the '817 Patent by contributing to infringement by others, such as manufacturers, resellers and end-users, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers and end-users of the Accused Products.

45. Apple's affirmative acts of selling the Accused Products and causing the Accused Products to be manufactured and sold contribute to Apple's manufacturers, resellers and end-users making or using the Accused Products in a normal and customary way that infringes the '817 Patent. The Accused Products constitute the material part of Ericsson's patented invention, have

no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use to infringe the '817 Patent.

46. Apple's infringement of the '817 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Ericsson pursuant to 35 U.S.C. §§ 284-285.

47. By way of example only, Apple's iPhone 13 infringes claim 10 of the '817 Patent as set forth in the claim chart attached as Exhibit C.

## Count IV: Claim for Patent Infringement of the '872 Patent

48. Ericsson repeats and realleges the allegations in paragraphs 1-47 as if fully set forth herein.

49. Apple has infringed, contributed to the infringement of, and/or induced infringement of the '872 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '872 Patent including, but not limited to, mobile telephones, tablet computers, and smart watches with cellular connectivity that implement 5G technology, including the Accused Products.

50. For example, the Accused Products infringe at least claims 7-12 and 19-24 of the '872 Patent. Apple makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices, which are covered by or made by a process covered by the claims of the '872 Patent, and thus directly infringes the '872 Patent.

51. Apple indirectly infringes the '872 Patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Accused Products, who perform each step of the claimed invention as directed by Apple. Apple received actual notice of the '872 Patent at least as early as the filing of this Complaint.

52. Apple affirmatively acts to sell the Accused Products, cause the Accused Products to be manufactured, and provide directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Accused Products in a manner that directly infringes the '872 Patent. Through its manufacture and sales of the Accused Products, Apple performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

53. Apple also indirectly infringes the '872 Patent by contributing to infringement by others, such as manufacturers, resellers and end-users, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers and end-users of the Accused Products.

54. Apple's affirmative acts of selling the Accused Products and causing the Accused Products to be manufactured and sold contribute to Apple's manufacturers, resellers and end-users making or using the Accused Products in a normal and customary way that infringes the '872 Patent. The Accused Products constitute the material part of Ericsson's patented invention, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use to infringe the '872 Patent.

55. Apple's infringement of the '872 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Ericsson pursuant to 35 U.S.C. §§ 284-285.

56. By way of example only, Apple's iPhone 13 infringes claim 7 of the '872 Patent as set forth in the claim chart attached as Exhibit D.

## DEMAND FOR JURY TRIAL

57. Ericsson hereby demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Ericsson respectfully requests that this Court enter judgment in its favor and grant the following relief:

A. Adjudge that Apple infringes the Asserted Patents;

B. Adjudge that Apple's infringement of the Asserted Patents was willful, and that Apple's continued infringement of the Asserted Patents is willful;

C. Award Ericsson damages in an amount adequate to compensate Ericsson for Apple's infringement of the Asserted Patents, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

D. Award enhanced damages pursuant to 35 U.S.C. § 284;

E. Award Ericsson pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs;

F. Enter an order finding that this is an exceptional case and awarding Ericsson its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

G. Enter a permanent injunction against all Apple products found to infringe the Asserted Patents;

H. Award, in lieu of an injunction, a compulsory forward royalty;

I. Order an accounting of damages; and

J. Award such other relief as the Court may deem appropriate and just under the circumstances.

**DATED**: January 17, 2022          Respectfully submitted,

*/s/ Thomas M. Melsheimer*
**Thomas M. Melsheimer**
Texas Bar No. 13922550
tmelsheimer@winston.com
**M. Brett Johnson**
Texas Bar No. 00790975
mbjohnson@winston.com
**Michael A. Bittner**
Texas Bar No. 24064905
mbittner@winston.com
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500

*/s/ Josh Budwin (with permission)*
Douglas Cawley
Nicholas Mathews
Richard Kamprath
Eric Hansen
Eleanor Callaway
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000

Josh Budwin
Kevin Hess
Mitch Verboncoeur
Caroline Burks
**MCKOOL SMITH, P.C.**
303 Colorado, Suite 200
Austin, Texas 78701
Telephone: (512) 692-8700

**ATTORNEYS FOR PLAINTIFFS**